# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# ST. JOSEPH DIVISION

| | |
|---|---|
| DOROTHY J. McHENRY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 14-CV-209-SJ-DGK-SSA |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

Plaintiff Dorothy J. McHenry seeks judicial review of the Commissioner of Social Security's ("Commissioner") decision denying her applications for Social Security Disability Insurance under Title II of the Social Security Act, 42 U.S.C. §§ 401–434, and Supplemental Security Income under Title XVI of the Act, 42 U.S.C. §§ 1381–1383f. The Administrative Law Judge ("ALJ") found Plaintiff had multiple severe impairments, including seizure disorder and fibromyalgia, but retained the residual functional capacity ("RFC") to perform several jobs such as an electronics sub-assembler, circuit board assembler, and packager.

Because the ALJ's opinion is supported by substantial evidence on the record as a whole, the Commissioner's decision is AFFIRMED.

### Procedural and Factual Background

A complete summary of the record is presented in the parties' briefs and repeated here only to the extent necessary. Plaintiff filed her Title II application on October 6, 2011, and her Title XVI application on October 14, 2011. Each alleges a disability onset date of June 23, 2011. After the Commissioner denied her application, Plaintiff requested an ALJ hearing. On February 19, 2013, the ALJ found that Plaintiff was not disabled. The Social Security Administration

Appeals Council denied Plaintiff's request for review on January 9, 2014, leaving the ALJ's decision as the Commissioner's final decision. Plaintiff has exhausted all administrative remedies and judicial review is now appropriate under 42 U.S.C. §§ 405(g), 1383(c)(3).

**Standard of Review**

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). The court must "defer heavily" to the Commissioner's findings and conclusions. *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice, and a decision is not outside this zone simply because the court might have decided the case differently were it the initial finder of fact. *Buckner*, 646 F.3d at 556.

**Discussion**

The Commissioner of Social Security follows a five-step sequential evaluation process[1] to determine whether a claimant is disabled, that is, unable to engage in any substantial gainful

---

[1] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) his impairments, alone or combined, are medically severe; (3) his severe impairments meet or medically equal a listed impairment; (4) his residual functional capacity precludes his past relevant work; and (5) his residual functional capacity permits an adjustment to any other work. The evaluation process ends if a determination of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); *see* 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g). Through Step Four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches Step Five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A).

Plaintiff argues that the ALJ erred by: (1) failing to include Plaintiff's headaches as a severe impairment at Step Two; and (2) rendering an infirm RFC for Step Four by ignoring certain evidence and by not sufficiently explaining her reasoning. These arguments are without merit.

**I. Because the record does not indicate how Plaintiff's migraine headaches impaired her ability to work, the ALJ did not err in classifying them as non-severe.**

The ALJ found that only Plaintiff's seizure disorder and fibromyalgia were severe impairments. R. at 17. Plaintiff claims the ALJ erred by not classifying her migraine headaches as severe impairments.

An impairment is "non-severe" if it does not "significantly limit" a claimant's mental and physical ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). "Severity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard . . . ." *Kirby v. Astrue*, 500 F.3d 705, 708 (8th Cir. 2007) (internal citation omitted). Merely being diagnosed with a disorder does not demonstrate a significant limitation, absent some evidence to establish a functional loss resulting from that diagnosis. *Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990).

In this case, substantial evidence supports the ALJ's finding that Plaintiff was not significantly limited by her migraines. Plaintiff's headaches may have caused her pain, *e.g.* R. at 600–01, but Plaintiff does not explain how this pain impaired her ability to perform any basic work activity. Although she went to the emergency room for a few days once because of her headaches, R. at 639–61, she reported several other symptoms besides headaches during that visit. R. at 655. The hospital rendered several diagnoses besides recurrent migraines, such as

3
Case 4:14-cv-00209-DGK   Document 16   Filed 01/06/15   Page 3 of 9

nausea, vomiting, and seizure disorder. R. at 648. This indicates that even assuming her hospital visit limited her ability to work, it was not needed because of her headaches alone. Because the record indicates only a mere diagnosis of recurrent migraines but not any functional loss resulting therefrom, the ALJ did not err at Step Two. *See Trenary*, 898 F.2d at 1364.

**II. The ALJ properly determined Plaintiff's RFC.**

Plaintiff next asserts that the ALJ committed a variety of substantive and procedural errors at Step Four in determining her RFC. First, she challenges how the ALJ discounted a treating physician's medical source statement. Second, she contends the ALJ improperly found her testimony incredible. Third, she argues that the ALJ erred by completely ignoring opinions rendered by two physicians. Fourth, she argues the ALJ did not prepare a narrative bridge between the record evidence and her RFC determination.

**A. The ALJ properly withheld weight from Dr. Barton's medical source statement.**

Plaintiff first challenges how the ALJ rejected the opinion of her treating physician, Sam Barton, D.O. ("Dr. Barton"). Dr. Barton opined in a medical source statement that Plaintiff had various work restrictions that are more restrictive than the ALJ's RFC formulation. R. at 615–18.

A claimant's RFC is fundamentally a "medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). In determining this medical question, the ALJ should accord a treating physician's opinion controlling weight so long as it is well-supported by medically acceptable diagnostic techniques and not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c), 416.927(c); *Myers v. Colvin*, 721 F.3d 521, 525 (8th Cir. 2013). Nonetheless, an ALJ may discount or disregard a treating physician's opinion where it is inconsistent with other substantial evidence in the record, such as the opinion of a non-examining consultant. *Myers*, 721 F.3d at 525.

The ALJ did not err in discounting Dr. Barton's medical source statement for several reasons.  The Court first notes that the ALJ did not reject Dr. Barton's opinions wholesale.  Rather, she withheld weight only from a medical source statement Dr. Barton completed.  R. at 23.  The ALJ found Plaintiff has seizure disorder, which is consistent with findings Dr. Barton made elsewhere in the record.  R. at 17–20, 332.

The ALJ properly discounted the medical source statement.  First, that opinion consists of checkboxes with no narrative responses.  The opinion states only, "see office notes," without indicating what particular notes Dr. Barton relied upon or whether these notes are even in the record.  R. at 615–18.  Because the opinion does not explain its reasoning, it holds negligible probative value.  *See Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012) ("[A] conclusory checkbox form has little evidentiary value when it cites no medical evidence, and provides little to no elaboration.").

Second, Dr. Barton indicated that Plaintiff can stand and walk for only one hour in an eight-hour day, R. at 615, but other doctors found that she had normal strength in her upper and lower extremities and the ability to walk with stability.  R. at 315, 416, 476.  Dr. Barton opined that Plaintiff could not squat, R. at 616, but another doctor observed Plaintiff fully squatting at a physical examination.  R. at 388.  For being inconsistent with other, better-supported evidence in the record, this opinion is discountable.  *See Turpin v. Colvin*, 750 F.3d 989, 993 (8th Cir. 2014).

Finally, Dr. Barton's opinion that Plaintiff had mobility issues is inconsistent with other, salient record evidence, including Plaintiff's admission that she has gone dancing.  R. at 474; *see Wildman v. Astrue*, 596 F.3d 959, 967–68 (8th Cir. 2010) (allowing an ALJ to disregard an opinion rendered by a physician that did not have access to all relevant evidence).

5
Case 4:14-cv-00209-DGK   Document 16   Filed 01/06/15   Page 5 of 9

"It is the ALJ's function to resolve conflicts among 'the various treating and examining physicians.'" *Bentley v. Shalala*, 52 F.3d 784, 787 (8th Cir. 1995). The ALJ here permissibly rejected Dr. Barton's medical source statement in favor of other record medical evidence. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

### B. The ALJ's decision to partially discount Plaintiff's testimony was well-supported.

Plaintiff next contends the ALJ erroneously discounted her credibility. *See* R. at 23.

The ALJ must examine the claimant's credibility to properly formulate her RFC. *Ellis v. Barnhart*, 392 F.3d 988, 995–96 (8th Cir. 2005). The ALJ must base her credibility findings on the entire record, including medical records and statements by the claimant. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The ALJ must make express credibility determinations, but is not required to discuss each credibility factor. *Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010). The district court must defer to the ALJ's credibility findings "so long as they are supported by good reasons and substantial evidence." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005).

Here, the ALJ cited the pertinent credibility factors and articulated at least three well-supported reasons for discounting Plaintiff's credibility. R. at 18, 23 (citing 20 C.F.R. §§ 404.1529, 416.929; 96-7p, 1996 WL 374186 (July 2, 1996); SSR 96-4p, 1996 WL 374187 (July 2, 1996)). First, Plaintiff testified that she could stand for only fifteen to twenty minutes at a time, R. at 56–57, but David W. Cathcart, D.O. ("Dr. Cathcart") opined that Plaintiff could stand and walk for six hours. R. at 388. The ALJ could discount this complaint, and similar complaints of extreme limitations, because it conflicted with record medical evidence. *See Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008).

Second, Plaintiff testified that she needed to lie down for four or more hours per day. Because there was no medical need for Plaintiff to do so, this restriction was self-imposed and thus could be rejected. *See Toland v. Colvin*, 761 F.3d 931, 936 (8th Cir. 2014); *Rosa v. Astrue*, 708 F. Supp. 2d 941, 958 (E.D. Mo. 2010) ("A record . . . which does not reflect physician[-]imposed restrictions suggests that a claimant's restrictions in daily activities are self-imposed rather than by medical necessity.").

Finally, Plaintiff offered conflicting testimony. She told Dr. Barton and Dr. Cathcart that she was fired from a job for having a seizure at work. R. 337, 387. However, she admitted to the ALJ at her hearing that she was fired for impermissibly using her cellular phone at work. R. at 45. The ALJ could find Plaintiff's dishonesty adversely affected her credibility. *See Trenary*, 898 F.2d at 1365 (affirming an ALJ's decision not to give the claimant's subjective testimony conclusive weight because of "inconsistencies in her reports of pain and functional limitations").

In sum, the Court defers to the ALJ's decision regarding Plaintiff's credibility because that determination is supported by "good reasons and substantial evidence." *Guilliams*, 393 F.3d at 801.[2]

### C. The ALJ's formulation of Plaintiff's RFC is consistent with Drs. Preylo's and Cathcart's opinions, her failure to thoroughly discuss them notwithstanding.

Plaintiff's next two arguments center on how the ALJ wrote her decision. Plaintiff contends the ALJ failed to assess any weight to the opinions of two examining sources, Brooke J.D. Preylo, Psy.D. ("Dr. Preylo"), and Dr. Cathcart. The ALJ's decision referenced Dr. Preylo

---

[2] Plaintiff argues that the ALJ's credibility determination is infirm because it contains boilerplate language. Even assuming that this characterization is accurate, boilerplate language is not reversible error when accompanied by thorough discussion. *See Bernard v. Astrue*, 974 F. Supp. 2d 1247, 1260 (D. Minn. 2013). In other words, boilerplate language of the sort allegedly seen here is, at most, a mere "arguable deficiency in opinion-writing technique." *Benskin v. Bowen*, 830 F.2d 878, 883 (8th Cir. 1987).

only obliquely by noting that a certain state agency psychological consultant had given great weight to Dr. Preylo's findings. The decision did not mention Dr. Cathcart.

When assessing an RFC, the ALJ must consider every medical opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). However, the ALJ is not required to discuss a medical opinion in her decision unless she renders an RFC that conflicts with that opinion. SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996); *see Wildman*, 596 F.3d at 966. Because Plaintiff makes no specific argument as to how Dr. Cathcart's opinion conflicts with the ALJ's decision, the Court rejects her general contention and considers only how the ALJ handled Dr. Preylo's opinion. *See Stapleton v. Colvin*, No. 14-CV-199-W-DGK-SSA, 2014 WL 6387167, at *2 n.3 (W.D. Mo. Nov. 14, 2014).

Here, Dr. Preylo opined that Plaintiff could understand and remember moderately complex instructions, concentrate and persist on moderately complex tasks, and interact in most all social situations involving the general public, supervisors, and coworkers. R. at 380. Dr. Preylo's opinion indicates that Plaintiff had no severe mental impairments, which is consistent with the ALJ's RFC formulation. R. at 18. Thus, the ALJ did not err in failing to explicitly discuss this opinion. *See Wildman*, 596 F.3d at 966.

Dr. Preylo did make some stray comments that appear to support Plaintiff's arguments. She noted that in general, "Loss of ability and employment can be a difficult adjustment that is sometimes accompanied by emotional challenges, such as depressed mood." R. at 380. She speculated that Plaintiff might not see even moderate improvement in the near future, even if Plaintiff followed her treatment recommendations. R. at 380. However, these comments appear to be pure conjecture, as they are not grounded in any specific findings. Thus, the ALJ did not need to consider them. *See Strongson v. Barnhart*, 361 F.3d 1066, 1070–71 (8th Cir. 2004)

(permitting the ALJ to discount a physician's opinion that was "without explanation or support from clinical findings").[3]

### D. The ALJ was not required to build a narrative bridge of the sort described by Plaintiff.

Plaintiff argues that the ALJ's RFC is erroneous because "the ALJ failed to provide a narrative bridge linking . . . the RFC to the specific medical records" (Doc. 6, at 26). Because the ALJ is not required "to follow each RFC limitation with a list of specific evidence on which the ALJ relied," the Court rejects Plaintiff's argument. *Hilgart v. Colvin*, No. 6:12-0322-DGK, 2013 WL 2250877, at *4 (W.D. Mo. May 22, 2013). The ALJ's RFC formulation evinces careful consideration of all evidence related to Plaintiff's credible limitations, and the Court finds no error in its construction. *See Wildman*, 596 F.3d at 969.

### Conclusion

Because substantial evidence on the record as a whole supports the ALJ's opinion, the Commissioner's decision denying benefits is AFFIRMED.

**IT IS SO ORDERED.**

Date:  January 6, 2015   /s/ Greg Kays
GREG KAYS, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[3] Plaintiff also challenges the ALJ's supposed ignorance of a Global Assessment of Functioning score that Dr. Preylo assigned Plaintiff. The ALJ expressly confronted that score, R. at 17, so Plaintiff's argument about the ALJ's opinion-writing on this front fails.